# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MERLYN V. KNAPP and BEVERLY KNAPP,<br><br>        Plaintiffs,<br>  v.<br><br>AMERICAN CRUISE LINES, INC.,<br><br>        Defendant.<br><br>  v.<br><br>OTIS ELEVATOR COMPANY,<br><br>        Third-Party Defendant. | Civil Action No.<br>3: 17 - CV - 2130 (CSH)<br><br><br><br><br><br>JUNE 25, 2018 |

## **MEMORANDUM AND ORDER ON PLAINTIFFS' RIGHT TO JURY TRIAL**

**HAIGHT, Senior District Judge:**

    This Memorandum considers, in a preliminary fashion, whether plaintiffs in a personal injury action are entitled to the jury trial demanded in their complaint. Defendants question that entitlement.

    Plaintiffs Merlyn Knapp and Beverly Knapp, husband and wife, are citizens of Florida. They booked passage on the riverboat QUEEN OF THE WEST for a round trip cruise on the Columbia River, departing from Portland, Oregon on May 6, 2017, and returning to that port on May 13. The QUEEN OF THE WEST was owned and operated by Defendant American Cruise Lines, Inc. ("ACL"), a Delaware corporation with its principal place of business in Connecticut. The vessel was equipped with an elevator which transported passengers from one deck to another. The elevator was

1

installed and maintained by Third-Party Defendant Otis Elevator Company ("Otis"), a New Jersey corporation with its principal place of business in Connecticut.[1]

Plaintiffs' complaint [Doc. 1] alleges that on May 8, 2017, while the QUEEN OF THE WEST was docked at another port on the Columbia River, the Knapps took the vessel's elevator to go from the main deck to the fourth deck. Merlyn Knapp, who was disabled, was driving a motorized scooter. According to the complaint, the elevator was defective and failed to stop level with the landing on the fourth deck, instead overshooting the landing and stopping higher than its surface: a condition known in elevator parlance as "misleveling." Knapp, seated in his scooter and facing in the opposite direction, was unaware of the misleveling, reversed his scooter, was caused to fall backward and strike his head and neck on the fourth-floor deck, and received serious injuries and suffered substantial money damages, which Plaintiffs filed this action to recover.

Plaintiffs' initial complaint names only ACL as a defendant *in personam*. Plaintiffs did not assert a claim against the QUEEN OF THE WEST *in rem*. The complaint alleges seven tort claims against ACL, principally sounding in the common law tort of negligence, followed by claims against ACL for "failing to maintain the vessel in accordance with applicable United States Coast Guard Regulations," and for "failing to provide a seaworthy vessel for carrying Mr. Knapp as a passenger for hire." Doc. 1, ¶¶ 33 (h) and (i). These are maritime claims.

The body of the complaint alleges that the Court "has jurisdiction of this action due to diversity of citizenship, pursuant to 28 U.S.C. Section 1332." *Id.*, ¶ 5. The civil cover sheet [Doc. 1-1] counsel filled out when filing the complaint cites the statutes under which suit is filed as "28

---

[1] The citizenships of the parties are derived from allegations in the pleadings and the civil cover sheet.

U.S.C. [§] 1332 and 28 U.S.C. [§] 1333(1)." Doc. 1-1, Pt. VI. Section 1331(1) confers subject matter jurisdiction upon the district courts over admiralty and maritime claims. Consistent with that entry, the parties' Rule 26(f) Report [Doc. 17] recites in ¶ II (A): "The plaintiffs assert that this [C]ourt has jurisdiction due to diversity of citizenship, 28 U.S.C. § 1332, and pursuant to this Court's maritime jurisdiction under 28 U.S.C. [§] 1331." Plaintiffs' seven tort claims against ACL fall within the Court's diversity jurisdiction, which is adequately pleaded in the complaint. Their final two claims fall within the Court's admiralty and maritime jurisdiction.

Thus far, I have discussed the Plaintiffs' initial complaint, against ACL alone. There have been subsequent pleadings. ACL filed a third-party complaint against Otis [Doc. 7]. Paragraph 5 of the third-party complaint alleges: "In this maritime action, the Court has subject matter jurisdiction over Otis Elevator pursuant to 28 U.S.C. ¶§§ 1333(1) and 1367." This wording is inapt. "Subject matter jurisdiction" considers whether a district court has jurisdiction over the *action*. That other great jurisdictional inquiry – "personal jurisdiction" – considers whether the court has jurisdiction over *the parties* to the action. What ACL is trying to say is that the Court's original jurisdiction over ACL's third-party complaint against Otis is derived solely from the maritime nature of its claim under § 1333(1). To the extent that the pleading also asserts non-maritime common law claims, ACL invokes supplemental jurisdiction under § 1367. ACL could not assert diversity as a source of subject matter jurisdiction for its claims against Otis, since both companies have their principal places of business in Connecticut.[2]

---

[2] The absence of diversity between ACL and Otis does not preclude diversity jurisdiction in the underlying case, since that jurisdiction requires only that complete diversity exist between all plaintiffs on the one hand and all defendants on the other, and the Plaintiff Knapps are both citizens of Florida.

3

Otis's answer [Doc. 12] to ACL's third-party complaint admits these jurisdictional allegations. Otis having appeared as a party in the action, Plaintiffs filed a complaint of their own [Doc. 14] against Otis. Plaintiffs allege in ¶ 5 that the Court "has jurisdiction of this action due to diversity of citizenship" under § 1332. Plaintiffs then allege in ¶ 8 that the Court "has jurisdiction of this matter pursuant to federal maritime law" under § 1333(1), and in ¶ 9 that the Court has "supplemental jurisdiction over plaintiffs' state law claims" under § 1367. Plaintiffs' complaint against Otis demands a trial by jury. Doc. 14, at 8. Otis's answer [Doc. 15] to Plaintiffs' complaint against it asserts that ¶¶ 5 and 9 contain conclusions of law requiring no answer. As to ¶ 8, Otis admits that the action falls within the Court's maritime jurisdiction under § 1333(1).

All three parties had appeared, and these pleadings had been filed, when counsel met for the planning meeting and submitted their joint report [Doc. 17] mandated by Fed. R. Civ. P. 26(f). Given the welter of sometimes self-contradictory allegations of subject matter jurisdiction in the pleadings, it is perhaps not surprising that a dispute has arisen as to whether Plaintiffs are entitled to demand a jury trial. In any event, both ACL and Otis contend that Plaintiffs have no right to a jury trial. *See* Doc. 17 (Rule 26(f) Report), at 4 (Pt. III.B., C.) (ACL contends that "a jury trial is precluded because this case is a maritime action"; "Otis Elevator further asserts . . . that the plaintiffs have no right to a jury trial of their claims," presumably for the same reason).

The question is not free from difficulty and has generated a number of cases. 8 *Moore's Federal Practice*, § 38.32[1][a] (Bender 3d ed.) states the generally held rules:

> There is no constitutionally protected right of trial by jury in cases that are properly within the admiralty jurisdiction of the federal courts. Rule 38(e) expressly states that the Federal Rules of Civil Procedure are not to be construed to create a right to a jury trial of issues in an admiralty or maritime claim within the meaning of Rule

> 9(h) . . . . Thus, when a claimant properly designates a claim as one in admiralty under Rule 9(h)(1), or when the claim is only cognizable in admiralty, whether so identified or not, there is no constitutional jury trial right as to that claim.

(footnote omitted). Rule 9(h)(1), incorporated by reference in Rule 38(e), has to do with a litigant's ability to designate in its pleading the nature of the claim upon which suit is brought. Rule 9(h)(1) provides in pertinent part:

> If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim. . . . A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

The consequence of that latter circumstance is that, under Rule 38(e), the litigant has no right to a jury trial.

A plaintiff's election of remedy under Rule 9(h)(1) may be irrevocable. One court has held that when a plaintiff elected to submit its claim to the diversity jurisdiction of the court, it could not then unilaterally amend its complaint to identify the claim as one in admiralty. *Johnson v. Penrod Drilling Co.,* 469 F.2d 897, 901-04 (5th Cir. 1972).

District Judge Newman (as he then was) surveyed this state of the law in *Parsell v. Shell Oil Company,* 421 F. Supp. 1275 (D. Conn. 1976), *aff'd sub nom., E. End Yacht Club, Inc. v. Shell Oil Co.*, 573 F.2d 1289 (2d Cir. 1977) (table). This was a suit for damages arising out of an oil spill into the waters of Bridgeport harbor during discharge of a cargo vessel. Plaintiffs demanded a jury trial. Defendants moved to strike the jury demand. Judge Newman observed that "the complaint at least alleged a cause of action in admiralty," but plaintiffs' challenged jury demand required additional analysis. Judge Newman reasoned:

5

> Further consideration of available bases of federal jurisdiction is now required by defendant's motion to strike the demand for a jury trial. For if the sole basis for federal jurisdiction is admiralty, the plaintiffs have no right to a jury trial, while if a separate and independent basis for federal jurisdiction exists to support a claim for damages at law, the jury demand must be honored. Since there is no diversity of citizenship, it is necessary to examine plaintiffs' claim that jurisdiction may be founded on 28 U.S.C.A. § 1331.

421 F. Supp. at 1276 (citations omitted).

Section 1331 confers "federal question" subject matter jurisdiction; plaintiffs contended that jurisdiction was derived from an act of Congress governing the rivers and harbors. Judge Newman rejected that argument and struck the plaintiffs' jury demand:

> Since neither the Rivers and Harbors Appropriation Act nor the federal common law of water pollution affords a basis for invoking federal jurisdiction for a damage action brought by private plaintiffs for pollution not affecting interstate interests, the case must remain on the admiralty side of the Court. Defendants' motion to strike the jury demand is therefore granted.

*Id.* at 1282.

A more recent application of these jurisdictional concepts appears in *Maersk, Inc. v Neewra, Inc.*, 687 F. Supp.2d 300 (S.D.N.Y. 2009), where Judge McMahon said of a suit on an ocean bill of lading: "[T]he bill of lading for the Neewra shipment is plainly a maritime contract," so that "Maersk's claim to enforce that contract of carriage therefore falls squarely within the Court's admiralty jurisdiction," with the result that "regardless of whether Maersk's maritime contract claim is also within the Court's subject-matter jurisdiction on any other ground, [defendant] Joginder has no right to a jury trial on the breach of maritime contract claim." 687 F. Supp. 2d at 339 (citation and internal quotation marks omitted).

While these jurisdictional principles and their effect upon the right to jury trial are well

recognized, the case at bar is complicated by the Plaintiff Knapps' simultaneous invocation in their pleadings of admiralty and diversity jurisdiction. This is not a case, for example, where a plaintiff asserts a claim within the district court's admiralty jurisdiction, defendant demands a jury trial on its counterclaims, and *plaintiff* moves to strike *defendant's* jury demand. There is a division of district court authority on a counterclaiming defendant's right to jury trial in those circumstances. *Compare Norwalk Cove Marina v. s/v ODYSSEUS*, 100 F. Supp. 2d 113, 114 (D. Conn. 2000) (Eginton*, J.*) (motion to strike jury demand granted) ("[T]he plaintiff electing to sue in admiralty has the right to determine the character of the action, which should not be disturbed by the defendant's counterclaims.") *with Sphere Drake Ins. PLC v. J. Shree Corp.*, 184 F.R.D. 258, 261 (S.D.N.Y. 1999) (Berman, *J.*) (denying motion to strike jury demand) (decision "preserves a litigant's 'inviolate' right to a trial by jury," there being "no concept that is more fundamental to the American judicial system than the right to trial by jury").

The case at bar presents the converse situation. It is the Plaintiffs who are demanding a jury trial (at least to the extent their claims against ACL and Otis fall within the Court's diversity jurisdiction). It is the Defendants (ACL and Otis) who challenge Plaintiffs' right to a jury trial (on the ground that Plaintiffs' claims fall within the admiralty jurisdiction). On that point, Defendants are clearly correct. Plaintiffs' contract with ACL for a river cruise on navigable waters is just as maritime in nature as the cargo bill of lading for ocean transport in *Maersk*. And Plaintiffs' claim that the QUEEN OF THE WEST was unseaworthy for the intended voyage is based upon a traditional principle of admiralty law.

Indeed, Plaintiffs do not dispute that their claims fall within admiralty jurisdiction. On the contrary, they proclaim that jurisdiction. But Plaintiffs' additional assertion is that at least some of

7

their claims also fall within diversity jurisdiction, and that is sufficient, in their view, to entitle them to the jury trial that would not be available on the admiralty side of the Court. The Court's research has not yet discovered a decision considering a plaintiff's right to jury trial in a case where the plaintiff asserts simultaneously that certain claims fall within both admiralty and diversity jurisdiction.

It is not clear if Plaintiffs regard themselves as entitled to a jury trial on all their claims, including the classic admiralty claim of unseaworthiness. Plaintiffs must clarify that question in a subsequent brief. As for Defendants, while they have questioned Plaintiffs' right to a jury trial, they have not formally moved to strike Plaintiffs' demands. Defendants must file such a motion if they intend to press the point. That procedural step is necessary because, unlike the existence *vel non* of subject matter jurisdiction, parties have the ability to waive or agree to a trial by jury. The constitutional requirement of jury trial in criminal felony cases does not extend to civil cases, such as the admiralty case at bar. In *Fitzgerald v. United States Lines Company*, 374 U.S. 16 (1963), the Supreme Court said: "While this Court has held that the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them. Nor does any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases." 374 U.S. at 20 (footnotes omitted). It follows that ACL and Otis must withdraw their challenges to Plaintiffs' jury demands and agree to them, or move to strike the demands. The latter course is required because the Court must be fully advised of the parties' contentions before deciding the issue, one way or the other, which may ultimately be reviewed on appeal.

The questions that may arise are illustrated by *Red Star Towing & Transportation Company, Inc. v. The MING GIANT*, 552 F. Supp. 367 (S.D.N.Y. 1983). A high seas collision between a tug

and a steamship resulted in the death of a mate on the tug. His widow sued both vessel owners, asserting claims under the federal Jones Act (which explicitly conferred a right to trial by jury) and the federal Death on the High Seas Act ("DOHSA") (which provided that a plaintiff "may maintain a suit for damages in the district courts of the United States, in admiralty," but said nothing about jury trials). District Judge Leval (as he then was) empaneled a jury to hear all claims, holding that "[w]here claims with independent jurisdictional basis normally carrying a jury right, such as plaintiff's Jones Act claim, are joined with admiralty claims arising out of the same transaction or occurrence, all claims may be tried to a jury." 552 F. Supp. at 371. The defendant shipowners had moved unsuccessfully before trial to strike plaintiff's jury demand. They moved after trial to strike the jury verdict favoring plaintiff in favor of a court-rendered decision. Judge Leval denied that motion as well. He reasoned: "Although the reference to the admiralty jurisdiction most likely indicated an expectation that DOHSA cases would ordinarily be tried without juries," the statute "should not be construed to forbid the employment of a jury, at least in a case that presents such valid reasons for its use." *Id.* at 375. No appeal was taken.

In *Matter of Poling Transportation Corporation*, 776 F. Supp. 779 (S.D.N.Y. 1991), an ocean-going tanker was discharging a gasoline cargo at a shore terminal. A shore tank overflowed, gasoline seeped into the terminal and adjacent properties, a fire and explosion occurred, and property owners filed state court actions asserting common law claims against the shipowner and terminal owner. The shipowner filed an admiralty complaint for exoneration from or limitation of liability ("the limitation proceeding"), which enjoined the state court actions and brought those plaintiffs into the limitation proceeding as claimants before the district court sitting in admiralty. When it came time to try the case, District Judge Sweet concluded:

9

> The proper approach here is to empanel a jury at the outset and allow trial to proceed on issues pertaining both to limitation and the common law claims.
>
> At the close of the evidence, the court will determine the admiralty issues, including any preclusive effect to be given to that resolution. The remaining issues on the state law claims, if any, will be submitted to the jury.

776 F. Supp. at 786.

In *Weeks v. Reliance Insurance Company Of New York*, 81 Civ. 3479, 1985 WL 462 (S.D.N.Y. Mar. 28, 1985), I reached a different result in different circumstances. Plaintiff yachtowners sued their insurance broker in federal court on their marine insurance policy, a claim within the court's admiralty jurisdiction. They also stated a pendent state law claim against the broker for negligent failure to provide insurance. The broker demanded a jury trial. I rejected that demand, concluding that while the court was prepared to retain pendent jurisdiction, "this admiralty action on a policy of marine insurance, coupled with a pendent common law claim of no independent federal jurisdictional basis, carries with it no right to trial by jury." *Id*. at *3. *Weeks* is of course distinguishable from the case at bar, where the jury demand is by plaintiffs rather than a defendant, and plaintiffs assert diversity as an independent jurisdictional basis for at least some of their claims.

This effort on the part of the Court is a Memorandum, not a Ruling. A Ruling on this record would be premature. The Knapps' right to a jury trial, seemingly opposed by ACL and Otis, is presently complicated by unresolved questions and uncertainties. The parties have not briefed the question, or any of its implications. Counsel will be directed to do so, if the question is to be made ripe for decision. This Memorandum is intended principally to inform and inspire counsel's own research into some interesting and important questions.

In these circumstances, the Court makes this ORDER:

Defendant and Third-Party Defendant must first decide whether they wish to press their opposition to Plaintiffs' jury demand. If they decide not to do so, the Court will empanel a jury in the case when the time comes, with consideration being given to the possible delineation of particular issues for decision by jury or court (in the manner adopted by Judge Sweet in *Poling*).

If Defendant and Third-Party Defendant (or either of them) decide to press their opposition to Plaintiffs' jury demands, they must file a formal motion to strike the presently existing jury demands. Defendants must file such motions, with supporting memoranda of law, on or before **July 20, 2018**.

Plaintiffs must file responsive papers on or before **August 3, 2018.** Defendants may, if so advised, file reply papers on or before **August 10, 2018.**

If the Court desires oral argument, counsel will be advised.

It is SO ORDERED.

Dated: New Haven, Connecticut
June 25, 2018

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge